**FILED**

2005 Oct-12  AM 10:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| STANLEY COLLINS, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] CV-04-CO-00303-W |
| | ] |
| BOARD OF TRUSTEES OF THE | ] |
| UNIVERSITY OF ALABAMA; OLEN PRUITT; | ] |
| and BROOKS BAKER, | ] |
| | ] |
| Defendants. | ] |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration defendants Board of Trustees of the University of Alabama ("University"), Olen Pruitt, and Brooks Baker's motion for summary judgment, which was filed on June 23, 2005.  (Doc. 43.) Plaintiff Stanley Collins sued the defendants for race discrimination arising out of his employment with the University under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), 42 U.S.C. § 1983 ("§ 1983"), and state law negligence claims for the defendants' alleged failure to prevent and correct racial discrimination.

(Docs. 1, 24.)  The issues raised in Defendants' motion for summary judgment have been briefed by both parties and are now ripe for decision.  Upon full consideration of the legal arguments and evidence presented, Defendants' motion is due to be granted in all respects.

II.    Facts.[1]

Plaintiff Stanley Collins was hired in June of 1990 by the University as a temporary electrician in its maintenance department.  (Doc. 39, p. 2.) Prior to his employment at the University, Mr. Collins had ten years of experience as an electrician, and he attended both Bessemer Technical College and Walker County Technical College, majoring in electricity at both institutions.  (Doc. 50, p. 2.)  As a result of a settlement reached in the case of *Woods, et al. v. Board of Trustees of the University of Alabama, et al.,* CV-87-2182-S, Mr. Collins was hired as a permanent electrician by the University.  *Id.*  The *Woods* case was a class action filed against the

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, the parties' Joint Status Report, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

University generally alleging that African-American employees in the Facilities Management Department had been discriminated against on the basis of race.  (Doc. 49, p. 3.)  As a result of the *Woods* litigation, the University entered into a consent decree, the express obligations of which were completed on December 10, 1993, with the filing of the University's compliance report.  *Id.*  Both Brooks Baker and Olen Pruitt held supervisory positions during the *Woods* litigation, and they continued to hold such positions during the course of the actions involved in this case.  *Id.*

Since he was hired as a permanent electrician, Mr. Collins has applied for five different supervisory positions within the University's maintenance department.  (Doc. 50, p. 2.)  Those positions are Electrician Group Leader, Design Build Services Construction Supervisor, Hospital Maintenance Supervisor Trainee, Campus Maintenance Supervisor Trainee, and Central Utilities Plant Supervisor.  (Doc. 49, pp. 8-20.)  Mr. Collins was not selected for any of these promotions.  (Doc. 39, p. 2.)

The Electrician Group Leader position requires, at a minimum, that the applicant complete high school and have five years of experience in the electrical field.  (Doc. 49, p. 9.)  The department prefers that an applicant

hold a post secondary vocational or technical school certificate or diploma, but it is not required.  *Id.*  The Facilities Management Department also has a policy that requires it to promote the qualified applicant with the earliest service date, but that requirement only applies to biweekly positions, such as Electrician Group Leader.  (Doc. 49, p. 6.)  Mr. Pruitt testified that the person with the most seniority who met the minimum qualifications would be the successful applicant for positions such as this.  (Doc. 54, Exhibit 5, pp. 29-30.)  The successful applicant for the promotion was Tim Muncher, who met the minimum qualifications and had a service date of May 22, 1989, preceding Plaintiff's start date by more than one year.  (Doc. 49, p. 10.)

Each of the other promotions requires an associate's degree and five years of experience in related construction fields.  (Doc. 49, pp. 11-19.)  The associate's degree may be substituted by producing evidence that the applicant has anywhere from five to ten years of experience with specific construction related trades, such as "HVAC Mechanic with CFC Universal license."  *Id.*  It is undisputed that Mr. Collins did not have an associate's degree, even though he attended two different vocational schools, and he did not have the specific experience that would substitute for the degree.

Along with nine other internal applicants, the Human Resources Department made the initial determination that Mr. Collins did not meet the minimum qualifications for the Design Build Services Construction Supervisor Position.  Of the internal applicants deemed not qualified, three were African-American, one was Hispanic, and six were white.  Despite the fact that he was not qualified, Mr. Collins was granted an interview on February 15, 2000, to make sure that his credentials had been properly represented. (Doc. 19, p. 13.)  The successful applicant for the position, James Branch, had an associate's degree in Building Construction and met the experience requirement of five years.  *Id.*

Mr. Collins was not considered for the Hospital and Campus Maintenance Supervisor positions because his application was miscoded and was not referred to the department for consideration by Human Resources. (Doc. 49, p. 14.)  Also, Mr. Collins never informed the Director of Hospital Maintenance, Olen Pruitt, that he had applied for the positions.  *Id.*  The successful applicant, James Downing, met the minimum requirements for the job, including the requirement of a two year associate's degree.  (Doc. 49, p. 18.)   Finally, Plaintiff was not awarded the Central Plant Utilities

Supervisor position because he did not meet the experience and education requirements. *Id*. That position remained vacant. (Doc. 49, p. 19.)

In 2003, Mr. Collins' toolbox was stolen while he was absent from work for an extended period due to an on-the-job injury. (Doc. 49, p. 21.) The toolbox had been assigned to him by the University, and it was worth at least $1,500. *Id*. After he returned to work, Plaintiff did not report the toolbox missing for 51 days. *Id*. This long delay in reporting the box stolen led to a written reprimand by Mr. Collins' supervisor, Scott Davis. However, the reprimand was later rescinded after Plaintiff told Mr. Davis that he left the toolbox in a secure area. (Doc. 49, pp. 21-22.) The matter was turned over to the University's Police Department, who investigated the incident and stated that Mr. Collins was uncooperative and refused to take a polygraph test. *Id*. The Facilities Department never asked Mr. Collins to take a polygraph test, and it never replaced Plaintiff's toolbox. (Doc. 49, p. 23.) He was required to check out any tools that were necessary to complete his work. (Doc. 50, p. 13.)

Mr. Collins claims that as a result of filing charges of discrimination with the EEOC regarding the toolbox incident his workload increased and he

was forced to work in a hazardous environment.  He was assigned to work in the Kracke Building, which contained asbestos. (Doc. 45, p. 18.)  Mr. Collins admitted in his deposition that he worked on the contaminated fume hoods every year that he had been employed with the Facilities Department. (Doc. 54, Exhibit 1, pp. 131-34.)  Plaintiff also admitted that he never complained about asbestos to either his immediate supervisor, Mr. Davis, or to anyone else in the department.  (Doc. 54, Exhibit 1, p. 145.)  In response to Plaintiff's allegation that his workload increased due to his EEOC charge, Mr. Davis testified that Plaintiff was not responsible for servicing all of the 336 exhaust fans which he claimed he had to maintain.  (Doc. 55, Exhibit 9, pp. 42-57.)  Instead, Mr. Davis said that Plaintiff was responsible for collecting the reports of all of the electricians who serviced the fans on campus.  *Id.* Mr. Davis was the group's supervisor, and he reorganized the group so that it was collectively responsible for servicing the fans as a unit.  *Id.*

As evidence of discriminatory conduct, Mr. Collins has pointed to an incident involving a rope that was in the shape of a noose.  Mr. Davis told Mr. Pruitt that there had been reports of a rope with a loop hanging from the rafters. (Doc. 54, Exhibit 5, p. 61.)  It was alleged that the rope was a noose,

and Mr. Pruitt testified that the University Police investigated the incident. *Id*.  Mr. Pruitt did not believe that the pictures of the rope depicted a "regular noose." *Id*. at 64.  Instead, he testified that it looked like the kind of knot that was used to support piping while a building was under construction. *Id*.

During his employment with the University, and prior to commencing this action, Mr. Collins filed three charges of discrimination with the EEOC. On January 25, 2002, Mr. Collins filed a charge claiming that the University maintained a pattern and practice of race discrimination by denying him and other minorities promotions.  (Doc. 47, Exhibit 25.)  He alleged in his Charge that "Caucasians have not been treated as I have been treated under the same and/or similar circumstances." *Id*.  Mr. Collins' second charge was filed on August 29, 2003, raising claims of retaliation and failure to promote. (Doc. 47, Exhibit 27.)   He alleged that the University engaged in discriminatory hiring practices in order to "bar" African-Americans from advancement. *Id*.  Finally, on February 11, 2004, Plaintiff filed his third charge of discrimination alleging various claims of retaliation based upon his complaints of discriminatory treatment.  (Doc. 47, Exhibit 29.)

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by

the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Discussion.

      A.    Title VII Claims.

          1.    Timeliness.

Both parties agree that prior to commencing an action under Title VII, a plaintiff must file a Charge of Discrimination with the EEOC within 180 days of the alleged unlawful conduct.  *See* 42 U.S.C. § 2000e-5(e)(1).  *See also Gregory v. Georgia Dept. of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004).  (Docs. 46, p. 4; 51, p. 6.)  The 180 day time period for filing a charge with the EEOC does not accrue until the plaintiff "receives unequivocal notice of the adverse employment decision."  *Grayson v. Kmart Corp.*, 79 F.3d 1086, 1100, n. 19 (11th Cir. 1996).  Plaintiff argues that the 180 day

filing requirement "is not a jurisdictional prerequisite to sue in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Sturniolo v. Sheaffer, Eaton, Inc.,* 15 F.3d 1023, 1025 (11th Cir. 1994) (*quoting Zipes v. Transworld Airlines, Inc.,* 455 U.S. 385, 393 (1982)). (Doc. 51, p. 6). In *Sturniolo*, the Court held that the tolling period for the plaintiff's age discrimination claim should have commenced when he either knew or should have known that his employer had replaced him with a younger individual. *Id.* at 1026.

This Court must view the evidence at summary judgment in a light most favorable to the nonmoving party. *Mize*, 93 F.3d at 742. Defendants argue that Collins' charges of discrimination were filed more than 180 days after the alleged discriminatory actions took place, and, therefore, must be dismissed as being untimely. (Doc. 46, p. 4.) The EEOC Charge filed on January 25, 2002, alleges that the University discriminated against Mr. Collins on November 15, 2001, when it promoted another employee to one of the supervisor trainee positions. (Doc. 47, Exhibit 25.) The other supervisor trainee position remained unfilled. On August 29, 2003, Mr. Collins filed another EEOC Charge related to retaliation and failure to

promote claims.  Plaintiff alleges in the Charge that he learned that the position was filled with a white male in the Spring of 2003.  (Doc. 47, Exhibit 27.)  Defendants have not produced any evidence that Plaintiff learned that he was replaced by an individual outside of his protected class more than 180 days prior to August 29, 2003.[2]  The final EEOC Charge was filed on  February 11, 2004, and alleged claims of retaliation based upon a written reprimand, an increase in workload, and a hazardous work environment.  (Doc. 47, Exhibit 29.)  Plaintiff alleges that the retaliation began in October of 2003, well within the 180 day time limit for filing an EEOC Charge.  *Id.*

The only dates provided in the University's brief are the dates that Mr. Collins applied for the jobs and the date that the University claims that it sent a letter to Mr. Collins notifying him that he would not be receiving the Electrician  Group  Leader  promotion.   However,  these  dates  do  not

---

[2]Defendants assert in their brief that the alleged acts of discrimination occurred more than 180 days prior to Plaintiff's filing of the EEOC charges.  However, unsupported representations by counsel cannot be taken into account when the Court is considering a motion for summary judgment.  *See e.g.*, *Jordan v. Warehouse Serv., Inc.*, 81 F. Supp. 2d 1257, 1263, n. 10 (M.D. Ala. 2000) (holding that unsworn statements of counsel are not evidence and cannot be considered when evaluating a motion for summary judgment); *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000) ("opinions, allegations and conclusory statements of counsel do not substitute for evidence").  Defendants, in their brief, have not pointed the Court to any evidence as to when Plaintiff should have been aware that a discriminatory action may have taken place.

necessarily reflect the date on which the plaintiff learned that a discriminatory act took place. Viewing the evidence in a light most favorable to the plaintiff, this Court cannot say that any of Mr. Collins' EEOC Charges were untimely as a matter of law.

> 2.    Disparate Treatment Claims.

> a.    Failure to Promote.

Plaintiff alleges that he was the victim of racial discrimination when the University refused his application for five different promotions. The University claims that Mr. Collins was not qualified for any of the positions which he sought, and, therefore, he cannot establish a *prima facie* case under Title VII, § 1981, and § 1983.[3]

A plaintiff may employ either direct or circumstantial evidence to prove a claim of disparate treatment. *See Denney v. City of Albany*, 247 F.3d 1172, 1182 (11th Cir. 2001); *Harris v. Shelby County Bd. of Educ.*, 99

---

[3]Defendants do not specifically argue in their brief that Plaintiff's § 1981 claims for failure to promote fail for the same reasons as his Title VII and § 1983 claims. (Doc. 46.) They have moved for summary judgment on Plaintiff's Title VII and § 1983 claims for failure to promote, but they did not mention the § 1981 claims in their brief. (Doc. 43, pp. 3-4.) However, Plaintiff obviously noticed this oversight by Defendants and argued against summary judgment for all three types of claims. (Doc. 51, p. 15.) Therefore, the Court has considered whether summary judgment is appropriate for all three claims, despite the Defendants' error. The Court recognizes that claims under § 1981 are probably identical to those raised under Title VII.

F.3d 1078, 1083 (11th Cir. 1996).  With regards to all of Mr. Collins' claims,

other than those premised upon disparate impact, he must rely upon

circumstantial evidence to prove his case because he has offered no direct

evidence of discrimination.  The Court reviews Title VII, Section 1981, and

Section 1983 claims based upon circumstantial evidence by applying the

three-step burden shifting analysis set out in the Supreme Court cases of

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dept. of*

*Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  *See Cooper v.*

*Southern Co.*, 390 F.3d 695, 724 n.16 (11th Cir. 2004); *Sledge v. Goodyear*

*Dunlop Tires N.A., Ltd.*, 275 F.3d 1014, 1015 n.1 (11th Cir. 2001); *Koch v.*

*Rugg,* 221 F.3d 1283, 1298 n. 31 (11th Cir. 2000); *Arrington v. Cobb County,*

139 F.3d 865, 873 (11th Cir. 1998).  Under this analysis, the initial burden lies

with the plaintiff to establish a *prima facie* case of racial discrimination.

*McDonnell Douglas*, 411 U.S. at 802.  Once the plaintiff has met the *prima*

*facie* case requirement, the defendant must "articulate some legitimate,

non-discriminatory reason for the [adverse employment action]."  *Id.*

However, "[t]he ultimate burden of persuading the trier of fact that the

defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

In order to meet his initial burden, Plaintiff must prove: (1) that he is a member of a protected class; (2) that he applied and was qualified for a job in which the employer was seeking applicants; (3) that he was rejected, despite being qualified; and (4) that after he was rejected, the position either remained open or the employer filled the position with a person outside of the protected class. *McDonnell Douglas*, 411 U.S. at 802; *Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998); *Arrington*, 139 F.3d at 873. There is no dispute regarding the first and third prongs of the test - Mr. Collins is an African-American, and he did not receive any of the promotions. The University argues that Plaintiff was not qualified for any of the five positions to which he applied.

(1)   Supervisory Positions.

Mr. Collins applied for the positions of Design Build Services Construction Supervisor, Hospital Maintenance Supervisor Trainee, Campus Maintenance Supervisor Trainee, and Central Plant Utilities Supervisor.  It is undisputed that the requirements for each of these jobs includes a two year

associates degree, as well as five years of verifiable construction related experience.[4] (Doc. 49, pp. 11, 16-17, 19-20.) While it appears that Plaintiff attended two different schools, Bessemer Technical College and Walker County Technical College, for a total of four years, he does not contend that he received an associate's degree from either school.  Each of the four positions was filled with an applicant who met both the education and experience requirements, with the exception of the Central Plant Utilities Supervisor position, which remained vacant.   Mr. Collins was even interviewed by the director of Design Build Services to make sure that his credentials were accurately represented, and during his deposition, Mr. Collins admitted that he did not meet the education requirement for these positions.  (Doc. 47, Exhibits 5, 36, p. 38.)

––––––––––––––––––

[4]Mr. Collins disputes the University's assertions that he did not meet the minimum qualifications for the promotions by presenting the deposition testimony of an expert, Paul Jenneret, Ph.D., who was hired by Plaintiff to review and render an opinion as to the reliability, validity, job-relatedness, or business necessity of the education and experience requirements of the positions.  (Doc. 50, p. 21.)  Defendants have filed a motion to exclude the expert's report, and that motion is due to be granted.  (Doc. 64.)  Such a report is not relevant because the University was not required to conduct a validation study according to the Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. § 1607.1.B. (2005).  A validation study regarding the selection procedures for certain jobs is not required unless there has been a showing of disparate impact.  There has been no proof of disparate impact in this case, and the qualifications for the promotions sought by Mr. Collins relate to his disparate treatment claims for failure to promote.

It is undisputed that Plaintiff was not considered for the Hospital Maintenance Supervisor Trainee position because his application was not referred to the department by Human Resources.  The application was improperly coded, and Mr. Collins never informed the director of Hospital Maintenance that he applied for the position.  This Court agrees with the University's view that the miscoding was an error, but a harmless one because Mr. Collins did not meet either the education or experience requirement.  (Doc. 45, p. 11.)  Not only did Plaintiff not have an associate's degree, but he did not have experience as an "HVAC Mechanic with CFC Universal license" or two years in the position of Facilities Maintenance Group Leader.  The successful applicant met both requirements - he had an Associate's Degree in Electrical Engineering Technology and he had the necessary experience.  (Doc. 47, Exhibit 32.)

Plaintiff argues that the qualifications are examples of pretextual conduct on the part of the University.  (Doc. 51, p. 19.)  He alleges that because some of the jobs allow for experience to substitute for education, this means that the education requirements are not "the touchstone that [the University] attempts to show this Court."  *Id*.  He also claims that the

miscoding of his application for the supervisor trainee positions was pretextual, even though he was not qualified for either job. *Id.* at 20. Finally, Plaintiff points to the asterisk that was placed on his personnel file after he filed charges of discrimination with the EEOC as evidence of pretext. *Id.*

Plaintiff states in his brief that Ms. Cunningham, a personnel representative in the Facilities Department, testified that it is up to the individual supervisors to enforce or follow the policies which set forth the qualifications for the jobs. (Doc. 51, p. 21.)  Plaintiff also states that another employee "admitted that the policies were inconsistent"; however, Mr. Collins does not cite to any deposition testimony or evidentiary submission to support these statements. *Id.* While it is true that pretext can be shown by an employer changing its explanation for its actions or the existence of inconsistencies in an employer's testimony, Plaintiff has not made such a showing in this case. *See Tidwell v. Carter products,* 135 F.3d 1422, 1428 (11th Cir. 1998) ("identification of inconsistencies in an employer's testimony can be pretext"); *Bechtel Construction Co. v. Secr. of Labor*, 50 F.3d 926 (11th Cir. 1995).  Ms. Cunningham's testimony that the

individual supervisors or interviewers are responsible for deciding whether to apply the guidelines is not the same as stating that the employer has provided inconsistent reasons for its employment decisions.

Plaintiff contends that both the miscoding of his application and the placement of an asterisk on his file are also examples of pretextual conduct. First, the miscoding of Mr. Collins' application was a harmless error because he did not meet the qualifications for the position.  Second, there has been deposition testimony in this case that the individuals who make the initial assessment of the applications in the Human Resources Department and those in the Facilities Department who review the applications are not privy to the files that contain the asterisk.  In her deposition, Connie Pruett, Director of Human Resource Relations, testified that the purpose of the asterisk is simply to denote that the file contains sensitive information, such as EEOC charges, grievances, or departmental labor complaints.  (Doc. 54, Exhibit 6, pp. 40-43.)  The asterisk allows human resources personnel to protect the employee's sensitive information from review by other University employees.  Plaintiff has not provided the Court with any evidence to show

that the University's explanation of the asterisk is anything but accurate.


(2)    Electrician Group Leader Position.

Mr. Collins also applied for, but did not receive, a promotion to the position of Electrician Group Leader.  It is undisputed that the requirements for the position include an accredited post-secondary vocational or technical school certificate and at least five years of experience in the electrical field. Plaintiff has satisfied the education requirement, since he has certificates from both technical and vocational post-secondary schools.  (Doc. 59, p. 13.) Mr. Collins asserts that the individual awarded the position did not have the preferred vocational or technical certificate.  However, the University points to the employee's application, which lists an Electrical Diploma from a vocational school.  (Doc. 55, Exhibit 10; Doc. 59, p. 13.)

The University claims that it is the policy of the Facilities Department to award such positions to the applicant with the earliest continuous service date when more than one applicant meets the education and experience requirements.   (Doc. 45, pp. 7-8.)    Defendants rely on the Facilities Management Guideline Manual, which states that "[i]t is the policy of

Facilities Management to promote the qualified applicant with the earliest service date to fill vacancies in bi-weekly positions." (Doc. 47, Exhibit 16.) The applicant awarded the job had a start date that preceded Plaintiff's, and Mr. Collins admitted in his deposition that he was aware of this difference. (Doc. 47, Exhibit 36, pp. 115-16.)

Plaintiff argues that the seniority provision is a guideline and not a policy that must be followed in every case.   In her deposition, Janet Cunningham, a personnel representative in the Facilities Department, stated that the decision of whether to follow the guideline is in the discretion of the department head or interviewer.   (Doc. 55, Exhibit 7, pp. 151-52.) Plaintiff argues that maintaining the seniority policy in the face of Ms. Cunningham's testimony is a "glaring inconsistency" that "is sufficient to establish pretext." (Doc. 51, p. 22.)  However, the plaintiff has not provided any evidence of specific instances in which the seniority guideline has been applied in an inconsistent manner.   He has also failed to establish why the seniority guideline should not be applied in this case.   Therefore, the University has articulated a legitimate, nondiscriminatory explanation for its decision to promote another employee over Mr. Collins.

Because Plaintiff can neither establish a *prima facie* case of discrimination nor prove that the University's explanations are pretextual, summary judgment is due to be granted on Plaintiff's failure to promote claims.

b.    Retaliation Under Title VII.

Plaintiff alleges that the University retaliated against him in various ways for filing his three charges with the EEOC.  Defendants argue that Mr. Collins cannot establish a *prima facie* case of retaliation because he cannot prove that the University took adverse employment action against him because of his EEOC charges.

Under 42 U.S.C. § 2000e-3(a), it is unlawful for an employer "to discriminate against any of his employees... because he has opposed" any unlawful employment or because he has "made a charge, testified, assisted, or participated in any manner in the investigation, proceeding, or hearing under this subchapter." In analyzing a claim of retaliation, the Court applies the burden-shifting approach set forth in *McDonnell Douglas* and *Burdine*. *McDonnell Douglas,* 411 U.S. 792; *Burdine*, 450 U.S. at 252-53; *Bigge v. Albertson, Inc.,* 894 F.2d 1497, 1501 (11th Cir. 1990).  Once the plaintiff

establishes his *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. *Id.* Finally, the burden returns to the plaintiff to show that the employer's reason is actually just pretext for discrimination.  *Berman v. Orkin Exterminating Co., Inc.,* 160 F.3d 697, 702 (11th Cir. 1998).  In the absence of direct evidence of discrimination, a plaintiff in a retaliation action must establish a *prima facie* case by demonstrating that: (1) the plaintiff has engaged in a statutorily protected activity; (2) the employer took an adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse action.  *See Little v. United Tech., Carrier Transicold Div.,* 103 F.3d 956, 959 (11th Cir.1997); *Berman,* 160 F.3d at 701; and *Gregory,* 355 F.3d at 1279.  It is undisputed that Mr. Collins engaged in protected activities when he filed his three EEOC charges, but the defendant disputes the assertion that any adverse employment action was taken against him because he filed charges of discrimination with the EEOC.

(1)    Adverse Employment Action.

In his brief in opposition to the University's motion for summary judgment, the plaintiff alleges thirteen instances of adverse employment action, including (1) the placement of an asterisk on his personnel file after he filed charges with the EEOC; (2) the denial of the Design Build Services Construction Supervisor position; (3) the denial of the Central Plant Utilities Supervisor position; (4) the denial of the Hospital Maintenance Supervisor Trainee position; (5) the denial of the Campus Maintenance Supervisor Trainee position; (6) the denial of the Electrician Group Leader position; (7) the false accusation of stealing his toolbox; (8) the issuance of two written reprimands for the stolen toolbox; (9) the refusal to issue a replacement toolbox; (10) threatening Mr. Collins with a polygraph test; (11) an oral reprimand for insubordination when he helped another electrician; (12) threatening to terminate Mr. Collins for the toolbox incident; and (13) an increase in his workload.  (Doc. 51, pp. 24-25.)[5]

---

[5]Other than his claims for failure to promote, Mr. Collins does not allege that these instances of retaliation are also instances of discriminatory conduct standing alone.  In his third EEOC Charge, Mr. Collins claimed that he suffered retaliation under Title VII for his complaints of discriminatory treatment.  (Doc. 47, Exhibit 29.)  He does not reference these instances of conduct on the part of the defendants outside of the context of claims of retaliation.

An adverse employment action "result[s] in some tangible, negative effect on the plaintiff's employment" through a "serious and material change in the terms, conditions or privileges of employment... as viewed by a reasonable person in the circumstances." *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1181-82 (11th Cir. 2003).  Mr. Collins' unsuccessful bids for promotion cannot amount to an adverse employment action because he was not qualified to receive those positions.  There has been no material change in the terms, conditions, or privileges of Mr. Collins' employment where he fails to receive a promotion for which he is not qualified.

In support of his claim, Plaintiff cites to *Shotz*, which holds that an action does not need to be "traumatic" to the employee's employment in order for it to be considered adverse.  *Shotz*, 344 F.3d at 1183.  However, the action must have some tangible, negative effect on the plaintiff's employment.  *Id.* at 1181-82.  It is unclear how the placement of an asterisk on Mr. Collins' personnel file results in a tangible, negative effect on his employment with the University.  In fact, the University contends that the asterisk is to protect Mr. Collins' privacy.  On the other hand, the failure of

the University to replace the plaintiff's toolbox after he reported it stolen would have a material effect on his ability to carry out his job duties.

In *Shotz*, the Court stated that "[e]mployer criticism, like employer praise, is an ordinary and appropriate feature of the workplace." *Shotz*, 344 F.3d at 1182. However, where the criticism rises above a "mere chip-on-the-shoulder complaint" and it is more than simply *de minimis* conduct, the court may find that it is an adverse employment action. *Id*. Written reprimands are intended to be permanent additions to an employee's record and are more than just criticism to the employee, but an oral reprimand does not rise to the level of adverse employment action.

Plaintiff's remaining allegations of retaliation - the accusation against Mr. Collins for stealing his toolbox, threatening Mr. Collins with a polygraph test, threatening him with termination for the toolbox incident, requiring him to work in a hazardous environment, and an increase in workload - must also meet the *prima facie* case requirement for retaliation under Title VII. Plaintiff turns to the Eleventh Circuit case of *McCulley v. Allstates Tech. Serv.*, 2005 WL 1475314 at *6 (11th Cir. 2005), to argue that these allegations must be considered in the collective. In *McCulley*, the Court "cautioned

against disentangling a plaintiff's varied allegations of retaliation for purposes of the adverse employment action test." *Id.* (citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir. 1998)).  While one allegation of retaliation may not meet the test for adverse employment action, the plaintiff's allegations considered collectively may constitute adverse employment action. *Id.*

While Plaintiff was away from work due to an on-the-job injury, his toolbox was stolen.  It is estimated that the toolbox was worth a minimum of $1,500, and Mr. Collins did not report the toolcart missing for 51 days after he returned to work.  Because of the long delay in reporting the tool cart missing, Collins was given a written reprimand, which was later rescinded after he told a supervisor that he left it in a secure area.  The University's police department investigated the incident, and it requested that Mr. Collins take a polygraph test.  The Facilities Department never requested a polygraph test of Mr. Collins, and there is no evidence that the police department knew about any of Mr. Collins' EEOC charges, such that it would be retaliating against him for his protected activities.  After the toolcart incident took place, Plaintiff states that he had to either borrow tools from

other electricians or walk across campus to check out the tools that he needed.  (Doc. 56, Exhibit 13, p. 2.)

Plaintiff also claims that he was subjected to hazardous working conditions when he was asked to work in an area containing asbestos. However, in his deposition, Mr. Collins admitted that he had worked in the building containing asbestos prior to the filing of his EEOC charge.  (Doc. 54, Exhibit 1, pp. 131-34.)  He also admitted that he never complained about the condition to his supervisors, even though he was trained to recognize the harmful material and he was instructed to notify the department so that any asbestos could be removed.  *Id*.

Mr. Collins claims that his workload increased when he was told to maintain 350 fans instead of 40.  The University rebuts this allegation by stating that the entire group is only responsible for 336 fans.   The electricians group was reorganized so that it shared the responsibility of maintaining all of the fans.  In fact, the University contends that Mr. Collins' workload actually decreased after the reorganization.  (Doc. 55, Exhibit 9, pp. 42-57.)  Scott Davis, one of Plaintiff's supervisors, testified that Plaintiff had not been assigned any additional fans to service.  *Id*.  Defendants argue

that instead of being held responsible for all of the fans, Plaintiff was required to simply collect the reports that were prepared by the other electricians and submit them to Mr. Davis.

Plaintiff responds by arguing that the University's explanation is "not worthy of belief." (Doc. 51, p. 28.)  Mr. Collins has presented the affidavit of Clarence Witherspoon, an electrician at the University, which states that Mr. Davis assigned the preventative maintenance on all of the exhaust fans to Mr. Collins in front of him and other employees.  (Doc. 56, Exhibit 12.) Plaintiff has also presented the deposition testimony of Ron Murphy, who stated that Mr. Collins was the only electrician assigned to Jefferson Towers, and the towers probably contained anywhere from one hundred to four hundred exhaust fans.  (Doc. 55, Exhibit 8, p. 30-31.)  Therefore, a genuine issue of fact exists as to whether Plaintiff experienced an increase in workload, and, therefore, suffered an adverse employment action.

Plaintiff has also alleged that someone placed a noose in one of the University's buildings in retaliation against him.  Defendants claim that the noose was located in a building in which Plaintiff did not work.  He was only in the building to visit a friend.  The University also claims that the rope had

been in the building for several months, and it was being used to support conduits while the building was still under construction.

The Eleventh Circuit has made it clear that a plaintiff's allegations may be considered collectively to show that adverse employment action has been taken against an employee. *See Bass v. Board of County Commissioners, Orange County, Florida*, 256 F.3d 1095, 1118 (11th Cir. 2001). The oral and written reprimands regarding the toolbox theft, the failure of the University to replace Plaintiff's toolbox, the possible increase in Plaintiff's workload, and the alleged noose incident collectively constitute adverse employment action for the purposes of establishing a *prima facie* case of retaliation.

### (2)    Causal Connection.

Even if Plaintiff can show that adverse employment actions have been taken against him, Defendants argue that he cannot establish a *prima facie* case of retaliation because there is no causal link between such actions and his protected activities. (Doc. 46, p. 17.) To prove that a causal connection exists, a plaintiff must show that the person taking the adverse action knew of the protected expression and that the protected expression and the adverse actions were not "wholly unrelated." *Simmons v. Camden County*

*Board of Education*, 757 F.2d 1187, 1189 (11th Cir. 1985); *Bass,* 256 F.3d at 1117-19.  Such a connection may be established by circumstantial evidence, such as close temporal proximity, even when the time that has elapsed between the protected activity and the adverse action is one year or more.  *See Bass*, 256 F.3d at 1117-19 (finding the causal connection requirement satisfied, even though the alleged retaliatory transfer occurred more than one year after the filing of the EEOC charge); *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (holding that the causal connection was shown, even though the retaliation occurred as late as one year after the plaintiff filed suit).  The United States Supreme Court has held that when a court relies solely on temporal proximity to establish a *prima facie* case of retaliation, the "temporal proximity must be 'very close.'" *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001).  However, the Eleventh Circuit has affirmed a district court's decision which held that a Plaintiff cannot rely on temporal proximity alone to prove that a triable issue of fact exists.  *See Wrenn v. Ledbetter*, 697 F. Supp. 483, 486 (N.D. Ga. 1988), *aff'd,* 880 F.2d 420 (11th Cir. 1989).

Defendant argues that any alleged retaliatory actions based upon the 1993 Consent Decree are too remote to be considered causally connected because they occurred more than seven years after the decree was entered. (Doc. 46, p. 18.)  Plaintiff responds by stating that the University initiated its retaliatory conduct after he filed his charges of discrimination with the EEOC.  (Doc. 51, p. 27.)  As an example of retaliatory conduct, Mr. Collins points to the fact that he was told to walk across campus to borrow tools after his toolbox was stolen.  (Doc. 51, p. 27.)  Plaintiff also states in his brief that "Defendants cannot deny that Messrs. Baker, Pruitt and Davis all knew of Mr. Collins' EEOC Charges because of the asterisk that UAB placed on his personnel file," but he has failed to refer to any evidence in support of conclusory statements.  (Doc. 51, p. 28.)  Defendant, on the other hand, has produced the testimony of Connie Pruett, who explained that the individuals reviewing the applications in the Facilities Department would not have access to the files that contain the asterisk.  (Doc. 54, Exhibit 6, pp. 40-43.)  Plaintiff also asserted that Pruitt and Baker received copies of all EEOC correspondence regarding Mr. Collins, but he has not pointed the Court to any evidence that would support these claims.  *Id*.

Even though the alleged adverse employment actions occurred after Plaintiff filed at least one of the EEOC Charges, there is no evidence that the actions were taken because Plaintiff filed such charges.  Mr. Collins cannot prove that a genuine issue of material fact exists by simply pointing to the alleged retaliatory acts and stating that they occurred after he filed his charges of discrimination with the EEOC.  Plaintiff has not produced sufficient evidence that the decisionmakers were aware of his protected conduct.  *See Bass*, 256 F.3d at 1119; *Gupta*, 212 F.3d at 590 (holding that "a plaintiff must show that the decisionmakers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated."); *Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) (requiring a plaintiff to at least "establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action.").  It is not enough for Mr. Collins to argue that someone at the University knew of his protected expression; instead, he is, at a minimum, required to show that the person who actually took the adverse action was aware of the expression - filing charges of discrimination with the EEOC.  *Bass*, 256 F.3d at 1119.

Therefore, Defendants are entitled to summary judgment regarding Plaintiff's claims of retaliation under Title VII and Section 1981.

### 3.   Disparate Impact.

Unlike claims of disparate treatment, Title VII claims based upon disparate impact seek to show that a facially neutral employment practice has significant adverse effects on certain protected groups, without requiring proof that the discrimination is intentional. *See Watson v. Fort Worth Bank and Trust,* 487 U.S. 977 (1988); *Powers v. Alabama Department of Education,* 854 F.2d 1285, 1291-92 (11th Cir. 1988). To establish a *prima facie* case of disparate impact, a plaintiff must demonstrate that the defendant employed a facially neutral employment practice that had a significant discriminatory effect. *Stephen v. PGA Sheraton Resort Ltd.,* 873 F.2d 276, 279 (11th Cir. 1989) (citing *Connecticut v. Teal,* 457 U.S. 440 (1982)); *Craig v. Alabama State University,* 804 F.2d 682, 685 (11th Cir. 1986). A plaintiff must also make some sort of comparison between the racial composition of persons in the labor pool qualified for the position and those actually holding that position, and he must demonstrate that the allegedly discriminatory practice is connected to the disparate impact. *Wards Cove Packing Co. v. Atonio,* 490

U.S. 642, 657 (1989).  Once the *prima facie* case is established, the employer must then show that the practice bears a "manifest relationship to the employment in question" and is justifiable as a "business necessity." *Connecticut v. Teal*, 457 U.S. at 446; *Griggs v. Duke Power Co.*, 401 U.S. 424, 430 -31 (1971); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1520 (11th Cir. 1995).  If the employer shows that the procedure is sufficiently job-related, the plaintiff may then attempt to demonstrate that other practices or criteria that have a lesser discriminatory effect could also serve the employer's business needs.  *Craig,* 804 F.2d at 685.

Plaintiff has not put forth any evidence that the University's education requirements had a significant discriminatory effect.  In fact, the University claims that the Human Resources Department deemed nine applicants for the Design Build Services Construction Supervisor position to be "not qualified."  Three of the disqualified applicants were African-American, one was Hispanic, and six were white.  *Id.*  In order to defeat a motion for summary judgment on a disparate impact claim, Plaintiff must bear both the burden of production and persuasion to establish that the challenged practice has a substantial adverse impact on a protected group, and Plaintiff

has not met this burden.   Mr. Collins has identified the education requirements as a practice which has a discriminatory impact on African-American employees, but he has failed to connect that practice to the alleged disparate impact and make the required statistical comparison.  *See Edwards v. Wallace Community College*, 49 F.3d 1517, 1520 (11th Cir. 1995).

  B. Sections 1981 and 1983 Claims Against the Board.

  Plaintiff has raised claims against the Board of Trustees of the University under Sections 1981 and 1983 .  (Doc. 24.)  Defendant argues that the Board is immune from such claims pursuant to the Eleventh Amendment of the Constitution of the United States.  (Doc. 46, p. 25.)  The Eleventh Circuit has made it clear that the Eleventh Amendment bars suits by private parties "seeking to impose a liability which must be paid from public funds in the state treasury."  *Harden v. Adams,* 760 F.2d 1158, 1163 (11th Cir. 1985) (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).  This rule applies to actions instituted against a state, a state agency, or a state official, and it covers claims for both monetary and injunctive relief.  *Id*. The Court in *Harden* relied on an Alabama Supreme Court decision, which

held that state universities are "agencies or instrumentalities of the state." *Id*. (citing *Massler v. Troy State University*, 343 So. 2d 1 (Ala. 1977)).

Even though the decision in *Harden* was limited to the plaintiff's § 1983 claims, Defendant also argues that the Eleventh Amendment bars Mr. Collins' § 1981 claims as well.  In support of his argument, Plaintiff cites to  the Fifth Circuit case of *Sessions v. Rusk State Hospital*, 648 F.2d 1066, 1068 (5th Cir. 1981), which held that the Eleventh Amendment barred suits under § 1981 against state entities.  Plaintiff argues that the Fifth Circuit's opinions regarding sovereign immunity for claims under § 1981 "are anything but unequivocal."  (Doc. 51, p. 13.)  He cites to a Fifth Circuit opinion which held that the legislative history of §§ 1981 and 1983 are not comparable and should not be treated the same.  *See Taylor v. Jones*, 653 F.2d 1193, 1205 n. 10 (5th Cir. 1981) (quoting *Dist. of Columbia v. Carter*, 409 U.S. 418 (1973)). However, in *Butts v. Volusia County*, 222 F.3d 891, 894 (11th Cir. 2000), the Eleventh Circuit held that Congress "clearly established § 1983 as the remedial scheme against state actors." *Id*.  The Court went on to state that "Congress provided no indication that it contemplated creating a cause of action against state actors outside of § 1983...." *Id*.

Based upon the Eleventh Circuit's ruling in *Butts* that § 1981 does not provide a vehicle through which Plaintiff can bring an action against a state agency, Defendant is entitled to summary judgment on Plaintiff's claims against the Board of Directors under §§ 1981 and 1983.

C.    Qualified Immunity.

Defendants Baker and Pruitt argue that they are due to be dismissed from the action based upon the protection of qualified immunity from suit on the § 1983 claims that Plaintiff has raised against them.  (Doc. 46, p. 25.) The seminal case regarding qualified immunity is the Supreme Court case of *Harlow v. Fitzgerald,* 457 U.S. 800 (1982), which held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known."  457 U.S. at 818.  The purpose of qualified immunity is to "ensure that before they are subjected to suit, officers are on notice their conduct is unlawful."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Saucier v. Katz*, 535 U.S. 194, 206 (2001)).  The protection of qualified immunity requires the court to make two inquiries: (1) Has the plaintiff

stated a violation of a constitutional right?; and (2) Was that right clearly established?  *Siegert v. Gilley,* 500 U.S. 226, 232 (1991); *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).  In order for a constitutional right to be "clearly established" it must be clear that a reasonable government agent would understand that what he is doing violates that right.  *Id.*  "[T]he unlawfulness must be apparent."  *Id.* (quoting *Anderson v. Creighton,* 483 U.S. at 640).

The Eleventh Circuit has held that once a defendant raises the defense of qualified immunity, the plaintiff bears the burden of proving that the federal rights that were allegedly violated were clearly established.  *Foy v. Holston,* 94 F.3d 1528, 1532 (11th Cir. 1996).  This is a difficult burden to discharge because "only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities.*"  *Id.* (quoting *Lassiter v. Alabama A&M University,* 28 F.3d 1146, 1149 (11th Cir. 1994)).  Plaintiff argues that during the time that Mr. Collins was supervised by Baker and Pruitt it was clearly established that intentional discrimination in the workplace on account of race violated federal law.  (Doc. 51, p. 11.) Plaintiff further argues that Baker and Pruitt understood the racially

discriminatory conduct that resulted in the *Perry Woods* Consent Decree litigation and, as supervisors, they either orchestrated or silently acquiesced in a scheme that allowed white employees to advance while it barred African-Americans from obtaining entry level craft positions and promotions. (Doc. 51, p. 12.)

Defendants rely on the Eleventh Circuit case of *Foy v. Holston* for the proposition that if any reasonable official in the defendants' position could have thought his or her act was lawful, qualified immunity should apply. 94 F.3d 1528. (Doc. 46, p. 27.) Defendants argue that in this case, there is no evidence that either of them knew or believed that their actions violated federal law, and no reasonable government agent in their position would have known that their actions infringed on Plaintiff's constitutional rights. (Doc. 46, pp. 28-29.) In fact, they claim that Brooks Baker was not even involved in any of the job decisions or written reprimands of which Mr. Collins complains. *Id*. at 28.

Defendants' reliance upon *Foy v. Holston* is misplaced because that decision "rested primarily on the existence of an *indisputable and adequate lawful motive* on the part of the social service employees such that

reasonable officials would disagree as to the legality of their conduct."
*Alexander v. Fulton County, Ga.,* 207 F.3d 1303, 1321 (11th Cir. 2000)
(quoting *Johnson v. City of Ft. Lauderdale,* 126 F.3d 1372, 1379 (11th Cir.
1997) (emphasis added)).  The Eleventh Circuit has held that in analyzing a
defense of qualified immunity, the first consideration is whether the
government agents acted within the scope of their discretionary authority
when the alleged wrongful actions took place.  *Alexander,* 207 F.3d at 1321
(citing *Evans v. Hightower,* 117 F.3d 1318, 1320 (11th Cir. 1997)) (denying the
defense of qualified immunity to a sheriff who allegedly intentionally
discriminated against many white law enforcement officers on account of
their race).

It is undisputed that Baker and Pruitt had the authority to issue written
reprimands and make decisions regarding Plaintiff's applications for
promotions.  There is also no doubt that when they engaged in the alleged
discriminatory actions, "intentional discrimination in the workplace on
account of race violated federal law."  *Id.* (citing *Smith v. Lomax,* 45 F.3d
402, 407 (11th Cir. 1995); *Yeldell v. Cooper Green Hosp., Inc.,* 956 F.2d 1056,
1064 (11th Cir. 1992); *Busby v. City of Orlando,* 931 F.2d 764, 775 (11th Cir.

1991); *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1478 (11th Cir. 1991)). However, Plaintiff has not presented substantial evidence that Baker and Pruitt engaged in intentional discrimination based upon race when his applications were denied, when he received written reprimands for his conduct, or for any other adverse employment actions that Plaintiff alleges Defendants took against him.  In order for Plaintiff to defeat Defendants' motion for summary judgment and take his case to a jury, he must present evidence that Defendants' violated the clearly established federal law that intentional discrimination based upon race is impermissible.  Plaintiff has not met this burden, and Baker and Pruitt are entitled to the defense of qualified immunity for Plaintiff's § 1983 claims.

D.    Sovereign Immunity.

Defendant has abandoned the defense of sovereign immunity for Plaintiff's claims based upon state law.  This Court entered an Order on August 12, 2005, pursuant to an agreement made between the parties to strike the twelfth affirmative defense contained in the Answer to the Amended Complaint.  (Doc. 67.)  That defense states that "Any state law claims brought by the Plaintiff are barred by sovereign immunity."  *Id.*

E.     State Law Claims.

Defendants have requested summary judgment as to Plaintiff's state law claims of negligent supervision and negligent retention.  (Doc. 43, p. 4.)  However, Defendants have not addressed these claims in their brief.  The only argument made by Defendants is that these claims are barred by sovereign immunity.  (Doc. 46, pp. 29-30.)  As the Court has noted above, Defendants have agreed to strike the defense of sovereign immunity according to an agreement reached between the parties.  (Doc. 67.)

A district court may decline to exercise jurisdiction over state law causes of action if "the district court has dismissed all claims over which it had original jurisdiction."  28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  Because this Court has concluded that Defendants' motion for summary judgment is due to be granted on Plaintiff's Title VII, § 1981, and § 1983 claims, the Court declines to exercise jurisdiction over Plaintiff's state law causes of action.

V.    Conclusion.

For the reasons stated above, Defendants' motion for summary judgment is due to be granted in all respects.  A separate order in conformity with this opinion will be entered.

Done this 12th day of October 2005.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153